IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. CARLOS MONTES WATERS and LARAIEL J. WINTON

**Direct Appeal from the Criminal Court for Knox County**
**No. 61974-A      Ray L. Jenkins, Judge**

---

**No. E2001-00882-CCA-R3-CD**
**March 6, 2003**

---

The defendants appeal their convictions for especially aggravated kidnapping and attempted aggravated robbery, as well as their twenty-five-year sentences. They claim there was insufficient evidence to support their convictions for kidnapping, the statutes upon which they were convicted are unconstitutional, they were denied a speedy trial, their trial counsel was ineffective, and their sentences are excessive. Winton contends that he had a plea agreement with the State and the prosecution committed prosecutorial misconduct by changing the terms of that agreement. After careful review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Brandt Davis, Knoxville, Tennessee, for the appellant, Carlos Montes Waters.

Leslie Jeffress, Knoxville, Tennessee, for the appellant, LaRaiel J. Winton.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Robert L. Jolley and Paula Ham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Originally, multi-count indictments were returned by the Knox County Grand Jury for the defendants, Carlos Montes Waters and LaRaiel J. Winton. Defendant Waters was charged with two counts of attempted first degree murder. Both defendants, Waters and Winton, were charged with four counts of aggravated robbery and five counts of especially aggravated kidnapping. Following a jury trial, both defendants were convicted of the especially aggravated kidnapping and the

attempted aggravated robbery of Mark St. Cloud, a Class A felony and a Class C felony, respectively. The jury acquitted the defendants on Count 11, as to the aggravated robbery. Prior to trial, the State moved to dismiss Count 11, which motion was granted by the trial court. The jury acquitted both defendants on the other eight counts. Both defendants were sentenced to twenty-five years as violent offenders, with 100% service for aggravated kidnapping, and six years as Range I standard offenders for the aggravated robbery convictions, to be served concurrently.

**Facts**

In the early morning hours of October 21, 1996, Hubert Ewing entertained guests at his girlfriend's apartment in Knoxville. The guests were Ken Almon, Aconio "Qualo" McFerson, and Mark St. Cloud. Ewing's girlfriend, Tanesha Fitzgerald, was asleep in a back bedroom. Ewing responded to a knock on the door by looking through the peephole. He saw the defendants, Carlos Montes Waters (Hi-C) and Laraiel J. Winton, knew them both, and opened the door. The defendants entered wearing masks or hose for concealment, and each carried a weapon. Waters had a small handgun, and Winton had a sawed-off .22 rifle.

The defendants ordered Ewing and his three guests down on the floor and demanded their jewelry and money. St. Cloud, seeking a change of surroundings, suggested there was money at his house. The defendants then ordered the four victims outside, still at gunpoint. All six of the party got into St. Cloud's Cadillac, and he drove them to his house. All disembarked there. St. Cloud's barking Rottweiler greeted the group. St. Cloud seized the opportunity to run, and Waters fired two or three shots. The other victims bolted and ran, and a general clamor arose in the neighborhood. During this period of confusion, the defendants scattered and left the vicinity of St. Cloud's home.

The police responded promptly, and the victims furnished the names of the defendants. After the defendants' arrest, Winton admitted to being a participant but claimed that the entire episode was a conspiracy against St. Cloud, the only intended victim of the robbery and the only victim not previously aware of the plan. According to Winton's testimony, St. Cloud was a large scale drug dealer who was believed to have in his possession a large quantity of cocaine, the actual objective of the robbery.

The Knox County Grand Jury returned multiple-count indictments against the defendants, Carlos Montes Waters and Laraiel J. Winton. Waters was charged with two counts of attempted first degree murder, in violation of Tennessee Code Annotated sections 39-13-202 and 39-12-101. Both Waters and Winton were charged with four counts of aggravated robbery, in violation of Tennessee Code Annotated section 39-13-402, and five counts of especially aggravated kidnapping, in violation of Tennessee Code Annotated section 39-13-305. Count Eleven, as to aggravated robbery, was dismissed on a motion of the State.

Following trial, the jury returned a verdict of guilty as to both defendants for the especially aggravated kidnapping of Mark St. Cloud, a Class A felony, in violation of Tennessee Code Annotated section 39-13-305, and the attempted aggravated robbery of St. Cloud, a Class C felony,

in violation of Tennessee Code Annotated sections 39-13-402 and 39-12-101. The jury acquitted the defendants on the eight other counts.

Both defendants were sentenced to twenty-five years as violent offenders, 100% service for aggravated kidnapping, and six years at 30%, concurrent, for the aggravated robbery convictions.

The defendants appeal as of right and raise the following issues:
(a) sufficiency of the evidence to convict of especially aggravated kidnapping;
(b) constitutionality of Tennessee Code Annotated sections 39-13-304 and 39-13-305;
(c) existence of a plea bargain between the State and Defendant Winton;
(d) denial of speedy trial;
(e) ineffective counsel; and
(f) excessive sentences.

## Analysis

### A. Sufficiency of Evidence to Convict The Defendants of Especially Aggravated Kidnapping

The defendants contend the trial court failed to grant the motion for judgment of acquittal. However, the standard applied by the trial court in reviewing this is the same as the standard on appeal for determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998).

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Frost, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996) (citing State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990)).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "[a]

guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The defendants contend that the removal of St. Cloud from the initial scene, at gunpoint, a distance of two or three miles, and the subsequent events were merely incidental to the attempted robbery. In support of their contention, the defendants place their reliance on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), which addressed a kidnapping where the only restraint utilized was that necessary to complete an accompanying felony. The Anthony court acknowledged that "the determination of whether a detention or movement is incidental to another defense is highly dependent on the facts in each case." Id. at 306.

The test, as enumerated in Anthony, is first to determine if the movement or confinement was beyond that necessary to consummate the act of attempted aggravated robbery. Id. at 307. If answered affirmatively, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id.

Applying this test to the instant facts, we conclude that the attempted aggravated robbery was fully consummated at the apartment of Hubert Ewing. The fact that the defendants had not realized their intended goal did not justify the transportation of the victims at gunpoint to a different location in their hope for further gain.

Secondly, the multiple shots fired while at St. Cloud's house certainly increased the victim's risk of harm, and we conclude that the evidence was sufficient to justify the trial court's denial of the defendants' motion for judgment of acquittal.

**B. Constitutionality of Tennessee Code Annotated sections 39-13-304 and 39-13-305**

We are asked by the defendants to revisit the language of Tennessee's especially aggravated kidnapping and aggravated kidnapping statutes to determine if the two statutes are unconstitutionally vague. Pursuant to this issue, the defendants allege that this jury was confused by the trial court's instruction in this regard. The record before us does not contain a transcription of the jury charge. The appellant is responsible for submitting a record which includes proceedings relevant to an issue raised on appeal. Otherwise, this Court is precluded from considering this issue. State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987); Tenn. R. App. P. 24(b).

As to the statutes' alleged constitutionality, the guiding principle of statutory construction is to seek out and give effect to the legislative purpose of the entire statute. State v. Williams, 854

S.W.2d 904, 907 (Tenn. Crim. App. 1993). The statutory meaning must be derived from the act in light of its general purposes. Tennessee Manufactured Housing Ass'n v. Metropolitan Gov't of Nashville, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

The Criminal Sentencing Reform Act of 1989 modified the general rule requiring strict construction of penal statutes. Presently, Tennessee Code Annotated section 39-11-104 dictates that the "provisions of [the criminal code] shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104 (1991); see also Williams, 854 S.W.2d at 908.

We have previously considered the constitutionality of the statutes and determined the legislative intent clear and unambiguous. State v. James R. Bishop, No. 03C01-9308-CR-00268 (Tenn. Crim. App., Aug. 18, 1994) (perm. to app. denied, Tenn. 1994); Sterling v. State, No. W1999-00608-CCA-R3-CD (Tenn. Crim. App. 2001); State v. Stephen Lloyd Givens, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033, at *5-6 (Tenn. Crim. App., Nov. 29, 2001). This issue is without merit.

## C. Plea Bargain

Defendant Winton contends that he accepted the terms of a plea bargain offer just before commencement of trial. Winton believed an offer to be open, although he had previously rejected its terms. He further contends that the State added a condition that co-defendant Waters also must plead. Waters refused to plead, and the matter proceeded to trial. Winton alleges that the added condition amounted to prosecutorial misconduct.

We deem these contentions unpersuasive in light of established authority regarding plea bargains and their enforcement. The State has no obligation to extend any benefit to a defendant in exchange for his plea of guilty. It is the trial court's ultimate decision to accept or reject a plea bargain, and the terms are revocable until such acceptance. Therefore, a plea bargain cannot be enforced until acceptance by the trial court. Harris v. State, 875 S.W.2d 662, 666 (Tenn. 1994). We hold that no plea bargain existed to enforce and that the prosecutor was not guilty of misconduct. This issue is without merit.

## D. Speedy Trial

The defendants allege a violation of their rights to a speedy trial. The defendants were arrested on October 1, 1996, and their trial commenced on December 1, 1999. There were numerous intervening settings and continuances. From the record before us, it appears the continuances were occasioned as follows: (a) the first two on the defendants' motions; (b) four due to other trials taking precedence; (c) one due to trial judge's illness; (d) one on the State's motion due to missing witnesses; and (e) one due to failure of the clerk to have jurors available. A speedy trial motion was filed on Defendant Winton's behalf on June 12, 1997, and a pro se speedy trial motion was filed by

Defendant Waters on August 4, 1999.

Without question, criminal defendants are constitutionally and statutorily entitled to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9; Tenn. Code Ann. § 40-14-101 (2002). There is no set time limit within which the trial must commence; rather, consideration must be given to each case on an *ad hoc* basis. See State v. Simmons, 54 S.W.3d 755, 759 (Tenn. 2001). The Tennessee Supreme Court has adopted the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), as the method for determining whether a defendant's right to a speedy trial has been violated. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). If, after conducting this balancing test, it is concluded that the defendant was in fact denied a speedy trial, constitutional principles require that the conviction be reversed and the criminal charges dismissed. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973).

In conducting this balancing test, we are required to examine the conduct of both the prosecution and the appellant, focusing primarily on: (1) the length of the delay; (2) the reason for the delay; (3) whether appellant asserted his right to a speedy trial; and (4) whether appellant was prejudiced by the delay. Wood, 924 S.W.2d at 346; Bishop, 493 S.W.2d at 84; State v. Jefferson, 938 S.W.2d 1, 12-13 (Tenn. Crim. App. 1996). The most important factor is whether the defendant was prejudiced by the delay. Simmons, 54 S.W.3d at 760. The most important inquiry with regard to prejudice is whether the delay impaired the defendant's ability to prepare a defense. Id. A delay of as long as two years, standing alone, will not support a finding of a speedy trial violation. Simmons, 54 S.W.3d at 759 (Tenn. 2001) (citing State v. Bishop, 493 S.W.2d 81,84 (Tenn. 1973)). The triggering factor is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S. Ct. at 2192.

A delay in excess of one year qualifies as "presumptively prejudicial," sufficient to invoke a Barker analysis. See Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691 n.1 (1992). The reasons for the various delays were previously set forth as clearly as the record before us allows. Only two of the eight continuances could conceivably be laid to the State's responsibility; the State's missing witnesses and the failure to have a jury panel on hand. The lack of a jury panel occasioned only a two day delay. Neither these or the other continuances could rationally be construed as a play to gain an advantage over the defense.

Defendant Winton clearly asserted his right by demanding, by motion, a speedy trial on June 12, 1997. Waters' pro se speedy trial motion was filed significantly later on August 4, 1999. Attorneys for both defendants had, at various times, orally objected to continuances and requested an immediate trial.

The most important factor in this analysis is whether the defendants suffered prejudice from the delay. State v. Simmons, 54 S.W.3d 755, 760 (Tenn. 2001). In evaluating possible prejudice, we must be cognizant of the rights that speedy trial protects: (1) to prevent undue and oppressive

incarceration prior to trial; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibilities that long delays will impair the defense. State v. Bishop, 493 S.W.2d 81, 85 (Tenn. 1973).

The defendants did endure extended incarceration. Winton was granted a bond reduction and pretrial release on January 30, 1998. Waters' bond was reduced twice, but he was unable to secure pretrial release. The defendants allege that the delay caused them "extreme stress" and "anxiety." Significantly, no claim is made by the defendants as to the delay causing impairment of their ability to prepare a defense. The serious charges in the indictment may very well have provoked some degree of anxiety and stress, but our criminal laws would be ineffectual in deterrent value if they failed to elicit such a reaction. There being no showing or claim of the delay causing impairment of their defense, we conclude the defendants have failed to demonstrate sufficient prejudice to violate their right to a speedy trial.

## E. Effectiveness of Trial Counsel

The defendants next allege that their respective trial counsel were ineffective. Before discussing the defendants' contentions regarding this claim, we must stress that "the practice of raising ineffective assistance of counsel claims on direct appeal is 'fraught with peril.'" Kirby George Wallace v. State, No. 01C01-9308-CC-00275, 1994 Tenn. Crim. App. LEXIS 591, (Tenn.Crim. App. at Nashville, Sept. 15, 1994). As in this case, we emphasize that "ineffective assistance of counsel claims should normally be raised by petition for post-conviction relief." State v. Derenzy Turner, No. 02C01-9512-CR-00390, 1997 Tenn. Crim. App. LEXIS 552,(Tenn. Crim. App. at Jackson, June 11, 1997), perm. to appeal denied (Tenn. 1998). In the instant case, an evidentiary hearing was conducted during the motion for a new trial which addressed the ineffective counsel claims. Therefore, we will deal with the issue on the merits.

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The defendant must overcome the presumption that counsel's conduct

falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a defendant must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Honeycutt, 54 S.W.3d at 768. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

### 1. Defendant Winton's Claim

An evidentiary hearing was had on the motion for a new trial in which Defendant Winton expressed general satisfaction with his attorney in terms of properly communicating plea bargain offers, preparation of the client for trial, and trial performance. Winton's primary complaint is the attorneys' failure to convey to the trial court on the day of trial that Winton had "accepted" a plea offer. Defendant Winton also asserted there was no independent investigation made, and his counsel admitted that he was unaware of the availability of funds for hiring an investigator.

In this opinion, we have previously concluded that no plea bargain existed which would be admissible to the trial court. Absent a meeting of the minds as to an agreement between the defendant and the State, such submission would have been in vain and an exercise in futility.

Winton's trial counsel testified as to the investigation that he personally performed. The transcript of the evidence reveals that Winton's own testimony as to his version of events was apparently accredited by the jury in their verdict. Therefore, it is disingenuous to suggest that further investigation would have benefitted the defendant. We conclude that Defendant Winton has not shown deficient performance on the part of trial counsel.

### 2. Defendant Waters' Claim

Defendant Carlos Waters' claim of ineffective trial counsel is essentially that a conflict existed to the degree that he did not receive competent representation. Waters also says that his attorney refused to take his phone calls. Waters estimated he talked to counsel on eight occasions. His attorney did not recall the exact number. An investigator was employed to assist in Waters' defense and talked with Waters both separately and together with counsel.

On April 26, 1999, Waters filed a pro se "Motion for Withdrawal Counsel [sic]." The motion

appears boilerplate in nature, alleging conflict of interest, incompetence, professional negligence, and ethical violations. It is not internally supported by specific examples or instances. The record also contains similar motions filed by Waters as to his other attorneys at the preliminary hearing and during the trial.

The trial transcript reveals that Waters' counsel conceded to a number of the defendant's demands, against counsel's advice and professional judgment. Waters' attorney made only one peremptory challenge during jury selection and was then rebuked by Waters for that action. At Waters' insistence, no further challenges were made. His counsel waived opening statement rather than accede to Waters' demand that counsel address the jury in an impermissible fashion more appropriate to ecclesiastical than judicial functions. Waters also insisted on testifying and proceeded to present a discourse until stopped and removed from the stand at the direction of the trial judge. The record glaringly reflects that Waters' counsel was handicapped, not by his own incompetence or indifference, but by impediments of his client's making. We conclude that Waters' trial attorney rendered effective representation, though challenged by difficult circumstances.

**F. Sentencing**

Both defendants appeal the length of their sentences and allege that certain enhancement factors were improperly applied and mitigating factors improperly rejected. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b) (Supp. 2000), to consider the following factors in sentencing:
> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement

factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); see Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

We conclude the trial court did not properly consider certain enhancement[1] and mitigating factors, therefore, review is de novo without a presumption of correctness.

At sentencing, the trial judge considered the evidence adduced at trial, the presentence report, enhancement factors relied upon by the State, mitigating factors submitted by Defendant Winton, argument of counsel, the testimony of the defendants, and a statement by Defendant Winton's mother.

The defendants were classified as Range I standard offenders with a sentencing range for especially aggravated kidnapping of fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(1) (1997). This being a Class A felony, the sentences would begin at the midpoint of the range before application of enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c), (d), (e).

As to attempted aggravated robbery, both defendants were Range I standard offenders with a sentencing range of three to six years. Tenn. Code Ann. § 40-35-112(3). As a Class C felony, sentencing would begin at the minimum sentence prior to consideration of enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c).

The trial judge considered the proposed enhancement and mitigating factors and ruled in the following manner:
> The State insists that certain enhancement factors contained in 40-35-114 apply, and these are separated as to the defendants in certain cases.

---

[1] The 2002 amendment of Tennessee Code Annotated section 40-35-114 added present (1) and redesignated former (1) through (22) as present (2) through (23) respectively.

Both defendants under No. 1 have a previous history of criminal convictions. Although they may be minor, the enhancement factor does not differentiate between serious and minor. So the Court finds the first one.

Mr. Winton is – the State insists that – No. 2, that the defendant was a leader in the commission of an offense. Mr. Winton – under that theory, he recruited rather than discussed the offense with his co-defendant and that is sufficient to make him a leader in the commission. The Court so finds.

As to the third – the third offense, regardless of the finding of the jury, the Court feels that there was more than one victim involved, that the verdict of the jury indicates that the jury did not find that the defendants were guilty beyond a reasonable doubt of the offense wherein the remaining victims were a party. And so the Court relies upon that as to both defendants.

The State insists that the defendant Winton in No. 8 has a previous history of unwillingness to comply with the conditions of a sentence involving release, and, two, that the defendant was adjudicated to have committed a delinquent act or acts that would constitute a felony if committed by an adult. The Court so finds.

All right. As to No. 13 under Mr. Winton, the State abandons that he was on bail at the time of the commission; however, the defendant Waters was on probation under that enhancement factor.

Under Sections 10 and 16, the language is so – is almost identical, and the Court considers those together. The activity – the criminal activity of both defendants was calculated as such to – to create a risk to human life, and the Court finds that joint designation.

The defendant Winton insists that under the mitigating factors 40-35-113 the defendant assisted the authorities in uncovering offenses or in detecting or apprehending other persons who have committed the offenses. The Court finds to the contrary. That did not exist.

And under 13, any other factor consistent, the Court finds no other factor consistent.

The State does not insist on consecutive sentencing under 40-35-115, and the Court will not consider that.

-11-

## 1. Defendant Winton's Sentence

The trial court applied six enhancement factors and no mitigating factors for Defendant Winton. The finding of a previous history of criminal conduct or convictions, Tenn. Code Ann. § 40-35-114(1), was conceded by the defendant.

Next, Defendant Winton was found to be a leader in the commission of the offense. Tenn. Code Ann. § 40-35-114(2). This factor was supported by Winton's own testimony and was properly applied.

The trial court found that the offenses involved more than one victim and thus applied Tennessee Code Annotated section 40-35-114(3). Both defendants contend that they were acquitted of all offenses against the other alleged victims and, therefore, only one victim is involved. Four victims were named in the indictments, and the jury acquitted the defendants of all charges referring to these victims, except the especially aggravated kidnapping and attempted aggravated robbery of Mark St. Cloud. The statutory language of Tennessee Code Annotated section 40-35-114(3) limits its application to "an offense" involving "more than one victim." Therefore, there cannot be multiple victims for any one offense against a specific, named individual. See State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002). Here, the trial court is limited to sentencing based upon the defendant's conviction involving the crimes against this one victim. We conclude the trial court improperly applied this enhancement factor.

The court next found that Defendant Winton had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). This was a result of the defendant's admitted failure to report as ordered to Pretrial Services. Despite the defendant's admitted problems with compliance with Pretrial Services, we do not feel the defendant's failure to report is sufficient to apply this enhancement factor.

Next, the trial court found that Defendant Winton had committed a delinquent act or acts that would constitute a felony if committed by an adult. Tenn. Code Ann. § 40-35-114(20). The record reflects Winton was adjudicated to have committed a juvenile act of "theft of a vehicle," thus supporting application of this factor.

Finally, the trial court found that Winton had no hesitation in committing the crimes when risk to human life was high, and the crimes were committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(10), (16). The court consolidated these as a single enhancing factor.

The defendant argues that the use of a deadly weapon was an essential element of both convictions, therefore, it cannot be used as an enhancement factor. We disagree. The record reflects, and we have concluded, that Winton recruited the co-defendant Waters to engage in the crimes committed. Waters' act of discharging his weapon was not a necessary element of especially aggravated kidnapping or attempted aggravated robbery and unquestionably increased the risk to

human life and/or bodily injury. Tenn. Code Ann. § 39-11-401, 402.

In addition, individuals other than the victim were in the area and at risk, both for their lives and for great bodily injury. Both factors (10) and (16) may be applied under these circumstances. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995); State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997).

Winton filed two mitigating factors for the court's consideration: (1) that he assisted authorities in locating and recovering any property or person involved in the crime, and (2) his remorse and admission at trial of his involvement. Tenn. Code Ann. § 40-35-113(10), (13) (1997). The record reflects that Winton did assist in locating the weapon he had used in the offenses. The trial judge considered these factors but did not apply them. In addressing factor (10), the judge ruled as follows: "The defendant assisted the authorities in uncovering offenses or in detecting or apprehending other persons who have committed the offenses. The court finds to the contrary. That did not exist." The language of Tennessee Code Annotated section 40-35-113(10) is: "The defendant assisted the authorities in locating or recovering any property or person involved in the crime." We conclude Winton's action did assist in recovering property, i.e. the weapon, involved in the crime. This mitigating factor was applicable to Winton.

Pursuant to this analysis, there are four applicable enhancement factors (combining (10) and (16)) and one mitigating factor. The sentences imposed were the maximum of twenty-five years for especially aggravated kidnapping and six years for attempted aggravated robbery. Although we hold that the trial court failed to apply a mitigating factor, that does not equate to a reduction in the sentences. State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995). As a result of our de novo review, we hold that the remaining enhancement factors are entitled to significant weight which justify the sentences imposed.

## 2. Defendant Waters' Sentence

The trial court applied five enhancing factors and no mitigating factors to Waters' sentence. The first enhancing factor, that the defendant had a previous history of criminal conduct or criminal convictions, Tenn. Code Ann. § 40-35-114(1), was conceded by the defendant and properly applied.

The trial court also applied factor (4), that the offenses involved more than one victim. For the reasons set forth in the analysis on Winton, we conclude the trial court improperly applied this enhancement factor.

Next, enhancement factor (13) was applied due to Waters' probationary status when the instant offenses were committed. However, the record does not reflect that the probated offense, casual exchange, was a felony. We thus conclude this enhancement factor is inappropriate.

Lastly, the trial court applied enhancement factors (10) and (16). We conclude these were properly applied for the reasons cited previously herein under the Winton analysis.

No mitigating factors were submitted by Defendant Waters, and none were applied. We conclude, pursuant to de novo review, that two enhancement factors and no mitigating factors are applicable. The elimination of an enhancement factor does not automatically equate to a sentence reduction. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). We conclude that the remaining enhancement factors are of sufficient weight to justify the sentences as imposed.

## **CONCLUSION**

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE